Our next case this morning is in the marriage of Kathleen A. Lange, Petitioner-Appellee v. David A. Lange, Respondent-Appellant, Case No. 5-23-0316. Counsel, ready to proceed? Thank you. Mr. Courtney, you represent the appellant, is that correct? I do, Judge. David Blanke. Good morning. Good morning. Your Honors, this appeal from our point of view deals with one issue. It deals only with whether our client was entitled to a contribution for non-marital property that was sold, transferred into a farm that was purchased in joint name. There was an argument in the trial court about whether the entirety of that purchase was non-marital. That isn't what the issue we raised on appeal. What we raised on appeal was under Section 503c-2 as to whether the estate making the contribution, in this case my client's non-marital estate, is entitled to a contribution back in the division of property for the amount of that contribution. That contribution was in two parts. Part of it was a 1031 real estate exchange of a non-marital farm that he owned prior, sold that farm approximately $125,000. The proceeds of that farm went directly to the purchase of the existing farm, which the court found to be marital property. That transfer was done through a 1031. One of the things that caused confusion, I think, for the trial court is that David testified on cross, I believe, that he took the proceeds of the sale of the non-marital farm and put them in his bank account. I would ask you simply to just take a look at Exhibit 9, which is the actual closing statement for the purchase of the farm in question. Those funds went from the sale of one farm directly to a 1031 fund from a 1031 organization directly to the purchase of this property. There was no intermediate transfer into a personal account. It's the way that 1031s operate. It went directly from that account directly to the purchase of the real estate. Is a 1031 the same as a starter exchange or is a starter exchange just for residences? I think that's for residences. This is for commercial property or farm investment property. And what it does is allow us to pass the basis and the tax liability on to the new entity, as long as it's an in-kind transfer of at least the same amount, and it was in this case. The farm that was purchased was in excess of a million dollars. The proceeds were about $125,000, so it went directly from there. So what was the effect of the loans on this farm? The effects of the loans on the purchased farm? Right. This money paid down, it served as the down payment for the farm. There would have been no purchase of this farm without the sale of the prior farm and the use of the crops from the prior farm, the proceeds of crops, to purchase the existing farm. There would have been no purchase. There was no down payment for this farm. And the proceeds of the agriculture that was on the farm, what happened to those proceeds? Those proceeds went directly to the purchase of the second farm. But before the purchase, where were the proceeds going from the prior farm? From prior years? Yes. They were going into my client's Busey Bank account. This is a very unusual case as far as how finances were maintained by these folks. I have many cases where people have separate accounts. I've never had a case where spouses loan money to the other at interest. I've never had that in my career. I've never had a case where a spouse loaned money to her in-laws at interest, which is what we have here. It is a little bit of an unusual circumstance. The money that was loaned to the in-laws, what was that money used for? It was used to cover operating expenses by the in-laws on their property. The in-laws were also farmers. They were... It didn't have anything to do with the farm that was pre-existing? David's pre-existing farm? No, ma'am. It was a separate operation. It didn't have anything to do with the subsequent farm? No, it did not. It was all related to the third-party farming operation by the in-laws. Okay. Does that make sense? Yes. Okay. The second part of the claim is exactly the proceeds of the agriculture on the non-marital farm were approximately $174,000. Again, Exhibit 9 has all of the sources of funds for this purchase. It has actually the grain sales tickets that were liquidated to purchase this farm. So our requirement here, our burden of proof, is that we be able to show first that the claim contribution funds can be traced by clear and convincing evidence. I don't believe there's really much of an argument about that. The source of funds is all contained on the exhibit. There was no testimony that the pre-existing farm was in any way marital property. There was no argument made like that. So I think we have clearly traced the funds. There is an additional issue, and there was some testimony in trial about this, and that is whether the marital estate had been properly compensated for my client's personal efforts on the non-marital farm, which generated the crop proceeds. We would argue that they have been compensated because what we did in effect is purchased a $1.5 million asset, which the court found to be marital property, which at the time of trial had about $500,000, $550,000 in equity. So there was certainly a benefit to the marital estate for the prior farming operation. Maybe I'm oversimplifying, but normally when you purchase property and you put it in both names, it's presumed to give. That can be overcome. Presumption can be overcome. But in this case, she not only had her name added to the deed, she also had her name added to the loan document. So she's not only receiving it maybe as a gift, she's obligated on the payment. So doesn't that go against the... It does. It does. It absolutely does. And that's why I was going to say it's the second burden that we have is we have to show you that it was not intended to be a gift. And I've cited Hunter to the court that talks about the factors that the court should consider. One is the control of the property, payment for the property, management of the property. Those are the factors to be considered. We also had the banker testify that the only reason she was required to be on both the loan documents, you are correct, Judge, and on the mortgage was it was a bank requirement that they mandated. That's where we went. We laid out, both in the brief and at the trial level, the peculiar arrangements between these parties with their finances. But we also laid out that my client had sole control of the farm operation. Kathleen was not involved in the farm operation. In fact, there was testimony she refused to be involved in the farm operation. There's testimony my client asked her to do books, which she refused to do. The expenses were paid primarily through the farm because the farm was rented. It was rented to that third-party operation. His parents rented the farm. The rent paid the payments on the farm. We gave up our argument that the entirety of the property is non-marital because I don't think that's true. Because of those rents and because of the other funds that were marital funds that were used to pay down the mortgage, pay down the tax liability, it's marital property. Our only argument is that initial contribution of $299,000 should be credited that day. The one factor, her name on the deed, her name on the mortgage, is not dispositive of whether the property is marital or non-marital. It's certainly a factor that the court must consider. I think reviewing this in its entirety, including the finances, the parties, the way the property was operated and controlled, our client has rebutted the presumption of gift. Our concern at the trial level, frankly, is that analysis was not performed. The comment from the trial court was that Dave went to one bank and the bank required the wife to be on the loan. The testimony also existed that that banker had been Dave's banker the whole time he had been farming. He had a relationship with that bank. And that could be a factor for the court to consider. Perhaps he should go to another bank. But the court's required to look at the totality of the evidence, not whose name is on the loan alone. We're required to look at the totality of the evidence. And that simply did not happen at the trial court level. And it is a very straightforward... So you're saying that the court's comment during the trial that your client didn't go to another bank was the only factor considered by the trial court? Judge, I'm sorry, I didn't mean to interrupt you. Judge, that's in the order. That is in the order. And the argument that I laid out to this court about the factors and the case law was all contained in closing argument that the court had before trial. I saw, if I'm wrong, I apologize, I didn't see any other explanation for her ruling. And I think, again, she's required to, the judge is required to look at all of that evidence. And that simply didn't happen here. I may be more... Let me ask you, if the court gives you the $299,000 credit that you're seeking, is that income to your client? It's property. I don't think it's income initially when he receives it. I think it is a source of income for the future. And that is another issue on the cross appeal is the child support. And, Your Honor, if that were the case, I would agree. There would have to be a recalculation if that money comes to him. I'm familiar with that line of cases that talks about income from investments. One of those was my cases in this court. And I agree. That is potentially an issue for income, which is, having eavesdropped on a prior case, which is one of the things that always concerns me. One issue leads into another, and they're dominoes. And they're not separate issues. And I agree with the court. That would potentially be income for support purposes and could require a recalculation of the income. It could require a recalculation of the division of property because the court may choose to divide property differently, the marital property differently, if he has more non-marital property. That could also occur. What is our standard of review in your case? Whether the decision is against manifest way of the evidence. I believe that's the standard. Based on the classification of marital versus non-marital property? Yes, sir. Yes, sir. Are there any other questions on our issues? I have a question that relates to the child support. Okay. Do you want to address that now? I can, sure. Your client went from $800 down to a significantly less amount. How does that happen? How did that happen with the child support? It was a change, a couple of things. It was a change in parenting time initially because initially his support was much higher. I want to say, and I apologize I don't have the exact number, $1,200 or $1,400 a month. It went down to $800 based upon his income, an average of his income over, I believe, the last two or three years prior to that ruling because that was done on a temporary basis. It then fell further because his income had changed in the interim years. He was self-employed at the time. And that last calculation of his income is what supported that lower amount of support. Did the court take into account the side deals that your client had, selling boats, ATVs, things of that nature? It is unclear to me exactly what was taken into consideration. It was not a review of tax returns because, again, you're familiar with the record. The court reviewed the tax returns and the child support level came in substantially more than, sorry, excuse me, her finding that his net income was substantially more than reflected on the tax returns. It's difficult for me, and I'll ask Ms. Stiglitz this, but it's difficult for me to understand how the court arrived at your client's child support obligation. I would suggest to the court that this was a complicated case on the child support calculation. We do not have a W-2 employee. We have an employee that was operating several different businesses with changes that occurred to those businesses through no fault of his during that period of time. The higher amounts of his income in the three years or so prior to the initial filing of divorce were related to excavation work that he did. There was testimony about the failure of that business. There was also testimony about changes in snow removal and snow plowing and having or losing contracts, and that fluxed throughout the period of the marriage. I would agree with that. All right. I'm sure we'll hear more about that. Let's do it. Okay. All right. Thank you so much. Any other questions? Thank you. Good morning. Good morning. I was going to say this earlier, but do please state your name for the record. It's recording, and I'm not sure how to pronounce it. Is it Dabler or Dabler? It's Dabler. Dabler. Thank you. Heather Dabler on behalf of the Applebee Cross Appellant. May it please the Court, Justice Gates, Justice Vaughn, Justice Welch, and Mr. Portney. I would have to agree with Mr. Portney. This was a very complicated case. There are a number of issues regarding disposition of property. Major amount of support, as well as factors relating to the allocation of parental responsibilities. As far as the financial matters and division of property go, I'll first address what Mr. Portney said initially. And with some of the Court's questions, the waters were muddied significantly by Mr. Lange's own actions. If the Court reviewed the record, there were numerous corporations. Mr. Lange wore a lot of hats. He was an operating engineer. He had a trucking company. He was a farmer. He plowed snow. He bought and sold boats. There were numerous accounts at P.C. Bank, some in corporations, some in personal names. Also, his brother and his parents were farmers, jack of all trades types of things. There was lots of money going back and forth. So it was, from that position, a complicated case. Mr. Portney, I have to agree with him that, primarily, they kept separate finances as far as their bank accounts went. And I would agree that Kate did not want to be involved in the mismanagement or transfer of property between his family and himself. However, as cited in my brief and as in the record, the marital residence was in joint names. Kate testified that she sold her non-marital residence and put that money into the house. We agree and stipulate that because it was where they lived, they were both on the loan, they were both on the mortgage, she gifted that money to the marital estate. And that's the same thing that Mr. Lange did here. I disagree with Mr. Portney that Exhibit 9 is proof that that money was not deposited into the P.C. Bank account when he sold those pieces of parcels of acreage. He did testify in the record and as cited in my brief, on cross-examination, that all of that money was commingled into his P.C. account, which also had his income in it. We think if the court were to look at No. 1 at 503A, the title of that section which says distribution of property is marital property is all property acquired by either spouse subsequent to the marriage. That's undisputed here. It was acquired then. And then it is except for property acquired in exchange for certain non-marital property. So I would agree if Mr. Lange did a truly 1031 exchange and he bought $100,000 worth of farm ground in Jefferson County and then bought $100,000 in Washington County and kept it in his name even though it was during the marriage, I would absolutely agree it maintained its non-marital identity. But it's not recurred here. He bought the property, put the deed in Kate's name, made her liable on over a million dollar loan and as cited in my brief, had that property lost its value, had they been foreclosed upon, Ms. Lange certainly would have been responsible for the entirety of the debt. And Mr. Lange, I can't imagine would be arguing that he should not have to be responsible or that she should have to be responsible for less than half the debt. Also under 503B1, again, there's a double presumption. Not only is there a presumption that anything purchased during a marriage is marital, anything placed in joint tenancy is marital. So I believe that Mr. Lange had to rebut both of those presumptions. I don't believe he rebutted that by clearing convincing evidence because once he transmuted that property into marital property, it lost its identity. And I am sure the court, I've been doing this for 18 years, I've been through two little recessions, I can't tell you how many times my clients got married interest rates 8, 6, 8% on their house. They go to a bank 6 years later and say I want to refinance, I want this 2-3% interest rate. Even though I've owned this house 10 years, the bank says, oh we want you to put your spouse's name on it. I have lost that argument to trial court every single time to have my client get their non-marital part back. Court says once you put it in joint names, once you use joint money, once you use pay to real estate taxes to make improvements, all of those things, and the amount of money that Mr. Lange spent. Did the bank concede though that she didn't pay the real estate taxes and she didn't pay the She did not from her income, no your honor. But the income that Mr. Lange was making is marital income. So it was marital money and all of that was going in and out. And it kind of, as we cited in the Wachetziki case, the court has to look at the factors. Payment of taxes and mortgages are one of the factors the court has to consider. All of those were used with marital money. Mr. Lange did not have a source of non-marital funds where he used that. Then, as I also indicated, the house was in joint names and Ms. Lange did testify with regards to her non-marital contribution from the sale of her home. The second issue I do want to address, which the court has already heard extensively this morning is the issue about the motion to reopen proofs. We believe that the court did err in neglecting to reopen the proofs. And as the court heard earlier, there are the things the court has to take into account is whether there is some excuse or failure to introduce this evidence at trial. The evidence was not known to us at the time of trial. It's not maybe totally clear from the record. I understand maybe the court can't consider, but Mr. Lange's parents were getting divorced at the same time. There were camps being started. There were documents being exchanged. Our client found out about these checks and this alleged loan after trial, but before judgment. And I do believe if it's not at worst fraud, it's at best some sort of neglect or misrepresentation to the court that if Mr. Lange had these loans of $110,000 to his parents, they should have been disclosed at trial or at least disclosed in discovery. The second factor the court is supposed to consider is whether the adverse party will be surprised or unfairly prejudiced. I don't see how Mr. Lange could be unfairly surprised or prejudiced because they were loans to his mother that he was repaid for. He was the one that had knowledge of them. And as Mr. Cortney testified, or excuse me, as Mr. Cortney stated earlier and is in the record, there was not a lot of clear boundaries set when transferring money back and forth to corporations or sharing with family members. And then the third factor is whether there are the most cogent reasons to deny the motion. I don't think that there are any clear reasons to deny the motion. It was pretty simple. Those checks that were repaymentable loans were attached to our motion to reopen proofs. The court ultimately decided it didn't but I believe that under these circumstances it would be appropriate. With regards to child support and Justice Keach, you asked this earlier, the court did make a finding in its judgment that there is additional income for buying and selling boats but didn't make any sort of finding as what that income was, where it came from, how much it was. It just basically took the tax returns which it said in parentheses included depreciation and averaged the amount of income over those four years. I would have to agree with Mr. Cortney there's not a lot of factual factors set forth as to how the court just came to that determination that they used the tax returns but that's our argument. Frequently there are deductions that you can take for tax purposes that you cannot take for deductions for child support purposes and as your Honor pointed out, let's say hypothetically the court were to say Mr. Longy is going to get this money back from the farm ground, is that income to him? I think under your Fortner case, your Honor, where Judge Gross found that when the father received wrongful death proceeds from his father and found that not necessarily income but enhanced the standard of living of the father that that should then transfer to the son in order that father's child support be increased and that was affirmed in the Fortner case. So I do think that that would occur with regards to finally parental allocation which is first and foremost what Ms. Longy's argument is and the basis for the cross appeal was that throughout this case everyone that testified Ms. Longy, Mr. Longy, the guardian of the item testified that the 24 months prior to the filing of the case, Ms. Longy was the primary custodial parent. She did the majority of the parenting duties, she did the majority of the child rearing. The finding of the court basically on that factor was that, well they have to consider what was a temporary basis. But these were kind of unprecedented circumstances. This case was filed shortly before the global pandemic of COVID and if you read through the court files, there were numerous hearings which were conducted Zoom, in person, continued for a variety of reasons. The initial order that the court determined was that Mr. Longy would just have two evenings a week and every other weekend. Had a hearing during the summer of excuse me, July of 2020 by Zoom where the court said for the summer we're going to do 50-50 we'll reset it in July of 2020 for, to see if we need to modify it during the school year and the trial was set November 20. So it wasn't, it was only supposed to be four months that this schedule was in place and then the court was going to address it. And then for the variety of reasons, this two years later was when the trial and I think that that prejudices our client, that prejudices the best interest of the children and I don't think that that should be considered excuse me the most important thing though that I think is that the guardian in this case basically said that she didn't think I'm trying to quote her specifically the legislature is going to fix the factor that states the court should consider who was the primary parent for the 24 months basically saying that Miss Beam didn't agree with that factor that yes we take on different roles when we're married and she thinks well now Mr. Long he can be more involved he should be more involved but that's not what was occurring. And I acknowledge that there's no factor that weighs more heavily on the other but just for the court to not consider that 24 months prior and say well now I have to look at what's been occurring during the case I think is prejudicial and I think it's going to discourage people in the future from reaching agreements on a temporary basis if they're going to be used against them. I agree with you on that this could be prejudicial to clients such as yourself but what is the court to do? Two years have gone by and it's working out fine I mean what are we supposed to do with that? I'm hopeful that we never have another global pandemic because there were a lot of issues in family court during that time I just think that it's one of the factors and I don't think though that the court could have basically said we're going to disregard the 24 months because it's been 24 months since the divorce was filed so that's where I have and I think that they still have to look at the factors. It's still less interest but just the guardian of items statement and then the courts affirmation basically of that statement that I don't agree with that factor. I don't think the guardian of items can say they don't agree with the factor or they hope the legislature changes it. They have to follow the law that's in place at the time the trial occurs Any other questions? I have another question. What is it specifically that you want the court to do on the reopening of the proofs? We want the court to reopen the proofs solely on the basis that Mr. Longy received $110,000 from his mother in between the close of evidence and the entry of the judgment so because we did not know about any alleged loan we would like to question Mr. Longy and have a hearing on the nature of that loan was it a gift? If it was a gift under Rogers it's income for child support purposes If it was a loan it was at least a liability of his mother that was owed to them. It was a loan that was owed to the marital estate so that's what we would like to be considered Weren't they aware of the loan at the time of the trial? Ms. Longy was not I thought she had it marked as an exhibit to the motion to reopen proofs because I said there were camps going on grandparents were getting divorced at the same time and she was provided those checks after trial So in discovery Mr. Longy would have had the obligation to supplement his disclosures. Did you have an interrogatory that would have covered that request? Your Honor in the standard matrimonial interrogatories one of them is are you owed any money or property from any other person? That is a standard matrimonial interrogatory in 214 You have a duty to seasonably supplement. That was not supplemented Also in his financial affidavit he disclosed the existence of one loan for $35,000 Nothing further Thank you very much Thank you. You have a chance to rebuttal Mr. Courtney rebuttal What was marked as an exhibit is mentioned in our response to the motion to reopen proofs was my client's deposition which was taken in his parents case which was in counsel's possession and this is not Ms. Davler's fault she didn't try this case. That deposition was marked as an exhibit was provided to me as a potential exhibit and was in the courtroom at the time of trial and it discussed all the money transfers between both parties between my client and his parents his parents and my client so that information was available to counsel she had all of that information Was the exhibit admitted? She never offered it She never offered the exhibit Nor did you? No and I would not have offered it judge we're a little bit beyond the record there were no written agreements and that's likewise in the deposition which is why it was never listed anywhere it was never a written agreement to repay in contrast to the loans between Kate and Mr. Longhi's parents between the loans between Kate and Mr. Longhi there were writings back and forth about these things Would your client have had the duty to supplement the interrogatories? He would have except the case was over the evidence was closed when this issue with these checks came up, the checks apparently were written after the divorce trial but before Judge Campbell ruled there's nothing for me to supplement those checks came out of the blue Well the fact that the loan existed that wasn't disclosed in the interrogatory you said it was in the deposition but it wasn't in the interrogatory it wasn't in the financial affidavit was it? It was not because it was not enforceable. It was never there was no way for me to enforce it as a law Mom and Dad are getting divorced. Mom and Dad are not on the same side. Son's not on the same side as both parents. There was no way, there was nothing in writing, no way for us to enforce it which is why it was not listed Whether or not you think there's a way to enforce it I'm concerned that the client received a bunch of money I mean, that fact existed, right? The fact that she paid him after trial absolutely existed The fact that he paid money to his parents likewise existed because all of his bank records back for years prior to the divorce were subpoenaed and offered into evidence Any check written anywhere to either parent was included in those records That information was their judge So when was the loan made to the parents? Your Honor, I apologize. I can't tell you that. I just don't know the answer I mean it's kind of going to what Justice Cates was asking It's either money that he paid out and has a potential to recover or it's dissipation. I mean, somehow that money needs to be accounted for. It seems to me in discovery or financial affidavits There were times and those checks were in evidence where money went to his parents Part of this money owed to the parents was for use of vehicles The $35,000 that remained that was listed was a debt he repaid for them which was produced in discovery So those documents did exist But you're talking about money he paid to them for use of their vehicles No, no, I'm sorry. Money they owed him for use of his vehicles. I'm sorry He had a trucking company as counsel mentioned Those trucks were used on parent's farm Never was there anything that said you're going to pay me back for these. There was him arguing I think they owe me for the use of these vehicles. There was nothing in writing to show what that was worth The only last comment is my time is expiring Justice Cates mentioned this on the factors with parenting time I agree with counsel these things were unusual times but I think our requirement and I hope this court's desire is to do what was best for these children and as Justice Cates pointed out, kids were doing great That's why the judge left the schedule alone I don't think it's, was it actually prejudicial to a litigant? Sure it was Was it helpful for the children? Absolutely. And that's why I think it was done the way it was Thank you. Questions? Justice Welch? Justice Cates? Alright, thank you. Thank you You get an additional rebuttal I believe across the panel I don't have a lot more to add, your honors, except for with regards to the deposition that Mr. Portney is referring to that was not put into evidence as Mr. Portney said, I was not counsel at trial I never saw it, it's not in the record so what is from what is in the record those loans were not disclosed they are not part of the file and that would be my only comment Thank you We appreciate your arguments It is a complicated case We will consider your briefs, your honors today, we'll take the matter under advisement and issue a decision in due course